UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MARIA MARGHERITA PERACCHINO
and MEDIAPRESS S.R.L.,

                      Plaintiffs,                 07 Civ. 3257 (LTS)

       -against-

VINCENZO MARRA and
JOHN DOE COMPANY,

                      Defendants.
-----------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Francesco De Pietro, Esq.
Wuersch & Gering LLP
100 Wall Street, 21st Floor
New York, NY 10005
Tel.: 212-509-5050
Fax: 212-509-9559

Attorneys for Plaintiffs

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

POINT I

THE AMENDED COMPLAINT SUFFICIENTLY PLEADS ALL CAUSES OF ACTION .................. 1

      A.      Count I ........................................................................................................... 3

      B.      Count II ......................................................................................................... 6

      C.      Count III ...................................................................................................... 10

      D.      Count IV ...................................................................................................... 11

      E.      Count V ....................................................................................................... 14

      F.      Count VI ...................................................................................................... 15

      G.      Count VII .................................................................................................... 15

      H.      Count VIII and Count IX ............................................................................ 16

      I.      Count X ....................................................................................................... 16

POINT II

NEW YORK IS THE PROPER FORUM ........................................................................... 16

PLAINTIFFS' CROSS-MOTION FOR LEAVE TO AMEND THE COMPLAINT ........................... 25

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

Acosta v. J.P. Morgan Chase & Co., 2007 WL 689529 (2d Cir. 2007) .................................. 24

Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp.2d 609 (SDNY 2003) ............................... 11, 12, 15

Banks v. Correctional Svcs. Corp., 475 F. Supp.2d 189 (EDNY 2007) ................................. 3, 5

Base Metal Trading S.A. v. Russian Aluminium, 253 F. Supp.2d 681 (SDNY 2003) ......................... 24

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ................................................. 2, 3

Brass v. American Film Techs., Inc., 987 F.2d 142 (2d Cir. 1993) ........................................... 2

Capital Currency Exch., N.V. v. Nat'l Westminister Bank PLC, 155 F.3d 603 (2d Cir. 1998) ............ 23

Chanayil v. Gulati, 169 F.3d 168 (2d Cir. 1999) ...................................................... 12

Conley v. Gibson, 78 S. Ct. 99 (1957) ............................................................... 5

Curley v. AMR Corp., 153 F.3d 5 (2d Cir. 1998) ...................................................... 23

Daventree Ltd. v. Republic of Azerbaijan, 349 F.Supp. 2d 736 (SDNY 2004) ......................... 24

Erickson v. Pardus, 127 S. Ct. 2197 (2007) ........................................................... 2

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168 (2d Cir. 2004) ................................................................................................ 2, 3, 14

Foman v. Davis, 371 U.S. 178 (1962) ................................................................. 25

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947).................................................. 16, 20, 23

Harsco Corp. v. Segui, 91 F.3d 3378 (2d Cir. 1996) .................................................. 3

Henneberry v. Sumitomo Corp. of America, 2007 U.S. Dist. LEXIS 50633, at *25-26 (SDNY July 12, 2007) ........................................................................... 6, 7, 14, 25

In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India, 634 F. Supp. 842 (SDNY 1986) ....... 23

Iragorri v. United Techs. Corp., 274 F.3d 65 (2d Cir. 2001) ........................................ 16-18, 20, 23, 24

Jofen v. Epoch Biosciences, Inc., 2002 U.S. Dist. LEXIS 12189, at *24 (SDNY June 26, 2002) ........ 10

Kaye v. Grossman, 202 F.3d 611 (2d Cir. 2000) ...................................................... 6

Kimmell v. Shaefer, 89 N.Y.2d 2574 (Ct. App. 1996) .................................................. 8

Koster v. Lumbersmens Mut. Cas. Co., 330 U.S. 518 (1947) ................................... 20

Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 2007 U.S. Dist. LEXIS 49641, at *9 (SDNY July 9, 2007) ...........................................................................1-3, 14

Maritima Aragua S.A. v. M/T Trade Resolve, 823 F. Supp. 143 (SDNY 1993) ................................... 22

Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp.2d 514 (SDNY 2001) ................ 14

Norex Petroleum Ltd. v. Access. Indus., Inc., 416 F.3d 146 (2d Cir. 2005) ........................ 16, 18, 19, 24

Oliver Sch., Inc. v. Foley, 930 F.2d 248 (2d Cir. 1991) .................................. 25

Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990) ................................... 11

Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41 (2d Cir. 1996) .................................. 24

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) ........................................ 16, 20

Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003) ......................... 18

Powers v. British Vita, P.L.C., 57 F.3d 176 (2d Cir. 1995) .................................. 11

R.G. Group Inc. v. Horn & Hardart Co., 751 F.2d 69 (2d Cir. 1984) ........................... 9

Randolph Equities, LLC v. Carbon Capital, Inc., 2007 U.S. Dist. LEXIS 21670, at *10 (SDNY March 26, 2007) ...................................................................................... 3

Reprosystem, B.V. v. SCM Corp., 727 F.2d 257 (2d Cir. 1984) ........................................5, 9

Rosenblatt v. Christie, 195 F.3d 22 (2d Cir. 2006) ....................................... 5

S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp., 84 F.3d 629 (2d Cir. 1996) ................... 9, 10

Shields v. Citytrust Bancorp Inc., 25 F.3d 1124 (2d Cir. 1994) ............................. 13

Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355 (2d Cir. 2003) ........................... 24

Teachers Ins. and Annuity Association of America v. Tribune Co., 610 F.Supp. 491 (S.D.N.Y. 1987) .............................................................................. 4

The Republic of Colombia v. Diageo North America Inc., 2007 U.S. Dist. LEXIS 44366 (EDNY June 19, 2007) ...................................................................15-21, 23

Tierney v. Omnicom Group, 2007 U.S. Dist. LEXIS 50435, at *27 (SDNY July 11, 2007) ................ 6

Winston v. MediaFare Entertainment Corp., 777 F.2d 78 (2d Cir.1985) .................................................. 5

Wrightman-Cervantes v. American Civil Liberties Union, 2007 U.S. Dist. LEXIS 45998 (SDNY June 25, 2007) ............................................................................................................................... 4

Plaintiffs, Maria Margherita Peracchino ("Peracchino") and MediaPress S.r.l. ("MP"), by their undersigned attorneys, respectfully submit this Memorandum of Law, together with the affidavits of Plaintiffs and Cane, in opposition to Defendants' Motion to Dismiss the Amended Complaint, and in support of Plaintiffs' Cross-Motion for Leave to Amend the Complaint.

## PRELIMINARY STATEMENT

Plaintiffs will show that all causes of action in the Amended Complaint are well pleaded, according to Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure, and that Defendants' motion to dismiss the complaint for failure to state a cause of action should be denied.

Plaintiffs will also show that New York is the proper forum for this litigation; Defendants fail the test to warrant dismissal of the complaint based on allegations of forum non conveniens.

Plaintiffs respectfully request that in the event that this Court dismisses one or more counts of the Amended Complaint, dismissal be without prejudice and Plaintiffs be afforded an opportunity to re-plead in this action.

Plaintiffs submit affidavits in support of their opposition to Defendants' motion under Rule 12(b)(3) and (6) to further explain the facts giving rise to this litigation. Even without the additional "detailed factual allegations" of the affidavit, the Amended Complaint defeats Defendants' motion. For a complete set of the facts from which this action arises, this Honorable Court is respectfully referred to the Amended Complaint and the said affidavits, which are incorporated hereto by reference.

## POINT I
## THE AMENDED COMPLAINT SUFFICIENTLY PLEADS ALL CAUSES OF ACTION

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary". <u>Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.</u>, 2007 U.S. Dist. LEXIS 49641, at *9 (SDNY July 9, 2007)

1

(quoting <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007)).  "When a complaint is attacked by a Rule 12(b)(6) motion to dismiss, the plaintiff need not provide 'detailed factual allegations.'  To survive a motion to dismiss, it is enough that the complaint 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Id</u>. (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007)).  "The task of the court is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>Id</u>. (quoting <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 176 (2d Cir. 2004)).   A case cannot be dismissed on the ground that plaintiff's allegations are too conclusory.  <u>Id</u>., at *10 (quoting <u>Erickson</u>, at 2200).

As to the claim of fraud, Rule 9(b) requires that the complaint: (1) specify the statements which plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. <u>Manhattan Motorcars</u>, at *12. In the case of fraudulent concealment or omission, where the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud. <u>Id</u>., at *12-13. A duty to disclose "can arise in the course of negotiations pursuant to a business transaction in three situations (1) 'where [one] party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party, it cannot give only half of the truth'; (2) 'when the parties stand in a fiduciary or confidential relationship with each other'; and (3) 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" <u>Id</u>., at *11 (quoting <u>Brass v. American Film Techs., Inc.</u>, 987

F.2d 142, 150 (2d Cir. 1993)).

Plaintiffs will show that the Amended Complaint adequately pleads all claims, in compliance with Rules 8(a)(2) and 9(b), and that Defendants' motion to dismiss must be denied.

A.    COUNT I.

Plaintiffs sufficiently allege that Defendants breached contracts with Plaintiffs.

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Banks v. Correctional Svcs. Corp., 475 F. Supp.2d 189, 195 (EDNY 2007) (quoting Eternity, *supra*, at 177 (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996))). Plaintiffs "need not provide 'detailed factual allegations.'" Manhattan Motorcar, *supra*, at *9 (quoting Twombly, at 1964). To defeat a motion to dismiss on the ground that there are no specific allegations in the complaint as to defendant's breach, all a plaintiff has to plead is that he was not fully paid under the contract. In so doing, plaintiff adequately pleads a breach of contract claim. Banks, at 196. In a case where defendant moved to dismiss on the ground that plaintiffs did not perform their obligations, the Court found that plaintiffs "adequately alleged the performance of their obligations, including providing [defendant] with all information and documentation necessary to close on the Property". Randolph Equities, LLC v. Carbon Capital, Inc., 2007 U.S. Dist. LEXIS 21670, at *10 (SDNY March 26, 2007).

There were at least four contracts between Plaintiffs and Defendants. As to the first contract, Plaintiffs allege that (1) there was an agreement between, (2) Plaintiffs performed their part of the bargain by providing a business plan, together with sensitive corporate and financial records to Zinni, and engaged the services of Riccardo Piana (Plaintiffs would have performed

3

the balance of their bargain – paying off the loan and/or issue shares - had Marra paid the agreed

upon figure of 150,000 Euro), (3) Marra breached the agreement by failing to pay, and (4)

Plaintiffs suffered damages. (Am. Com. ¶¶ 12-22, 48 and 50)

As to the second contract, Plaintiffs allege that (1) there was an agreement, (2) Plaintiffs

performed their part of the bargain by meeting with Giovanni Vasapollo (Marra's agent) to

whom they delivered sensitive records, inviting Marra and Walter Toccafondi (Marra's

associate), at Plaintiffs' expense, to Turin to meet MP's employees, hiring a new executive,

renting a larger office space and setting up a new commercial structure (Plaintiffs would also

have performed the balance of their bargain - issue shares and paying off the loan - had Marra

paid the money he promised), (3) Marra breached the agreement by failing to pay, and (4)

Plaintiffs suffered damages.  (Am. Com. ¶¶ 23-33, 48 and 50)

As to the third contract, Plaintiffs allege that (1) there was an agreement, (2) Plaintiffs

performed their part of the bargain by organizing an event (Plaintiffs would have performed the

balance of their bargain - issue shares and paying off the loan - had Marra paid the money he

promised), (3) Marra breached the agreement by failing to pay, and (4) Plaintiffs suffered

damages.  (Am. Com. ¶¶ 34-40, 48 and 50)

Plaintiffs' allegations of the fourth breach are similar. (Am. Com. ¶¶ 41-48 and 50)

Defendants cite Wrightman-Cervantes v. American Civil Liberties Union, 2007 U.S.

Dist. LEXIS 45998 (SDNY June 25, 2007), in support of their contention that the Amended

Complaint should be dismissed.[1]  In Wrightman-Cervantes, plaintiff alleged that defendants

conspired to violate plaintiff's right to practice law and to incarcerate him without stating any

facts upon which he could prove "a set of facts in support of his claim which would entitle him

---

[1]  Defendants also cite "Teachers Ins. and Annuity Association of America v. Tribune Co., 610 F.Supp. 491
(S.D.N.Y. 1987)"; however, Plaintiffs were not able to find this case as cited by Defendants.

to relief." Id., at *5 (quoting Conley v. Gibson, 78 S. Ct. 99, 102 (1957)). Here, Plaintiffs have

submitted 48 paragraphs of facts in the Amended Complaint, and additional facts in Plaintiffs'

Affidavit, which clearly support their claims.

      Defendants also rely on Rosenblatt v. Christie, 195 F.3d 22 (2d Cir. 2006), an

unpublished opinion. Reliance on this case is also misplaced since this case deals with a motion

for summary judgment which has a different standard than the one provided for motions to

dismiss. In a motion to dismiss, plaintiff does not have to prove anything. "The issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." Banks, *supra*, at 195. Here, Plaintiffs presented enough facts which entitle

them to offer evidence to support their claims.

      Moreover, Defendants rely on Winston v. MediaFare Entertainment Corp., 777 F.2d 78

(2d Cir.1985), and Reprosystem, B.V. v. SCM Corp., 727 F.2d 257 (2d Cir. 1984), to contend

that the Amended Complaint does not aver any expression of mutual consent to be bound or an

act, conduct or performance that manifests consent to be bound. (Def. Mem., p. 11) Both cases

can be easily distinguished from the instant case. In Winston and Reprosystem, evidence was

submitted that the parties did not intend to be bound by their negotiations until execution of a

written formal contract. Winston, at 81; Reprosystem, at 261. Here, Defendants have not

submitted any evidence supporting their contention that the parties were not to be bound until

execution of a formal written contract. Therefore, since parties are free to enter into a binding

contract without memorializing their agreement in a fully executed document, these litigants are

bound by their promises made verbally and in their correspondence. Winston, at 80. Plus, here

the parties' conduct and Plaintiffs' performance clearly manifest consent to be bound.

      By reason of the foregoing, Defendants' motion to dismiss Count I should be denied.

B.    COUNT II.

Plaintiffs sufficiently state a claim for promissory estoppel.

"A claim of promissory estoppel requires the plaintiff to establish three elements: '(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance.'" Tierney v. Omnicom Group, 2007 U.S. Dist. LEXIS 50435, at *27 (SDNY July 11, 2007) (quoting Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000)).

Here, for each of the promises made by Defendants to Plaintiffs, Plaintiffs allege the above three elements.  Therefore, Defendants' motion must be denied.

As to the first promise, Plaintiffs allege that Defendants promised to pay 150,000 Euro; this promise was clear and unambiguous, since (a) Marra, through Zinni, pretended to wire 150,000 Euro to Plaintiffs[2], (b) Defendants' repeatedly promised to Plaintiffs that the investment was a done deal, (c) Defendants urged Plaintiffs to do certain acts in furtherance of the investment. (Am. Com. ¶¶ 12-22) These factors make Defendants' statements "clear and unambiguous promises." Henneberry v. Sumitomo Corp. of Am., 2007 U.S. Dist. LEXIS 50633, at *25-26 (SDNY July 12, 2007).  Statements suggesting that an investment is a done deal are more than simply Defendants' prediction of what would happen in the future. Id., at *35.

Reasonable and foreseeable reliance on the promise is also well pleaded since Plaintiffs allege that (a) they engaged on activities based on Defendants' promised investments; (b) Defendants kept reassuring Plaintiffs that the funds had been wired (they even showed Plaintiffs a fake receipt) and that the investment was a done deal; (c) Plaintiffs were acting based on Defendants' promises and Defendants knew it. (Am. Com. ¶¶ 12-22 and 52)

In Henneberry, this Court determined that:

> At this stage of the proceeding the Court must only determine whether plaintiff has stated a claim which he should be allowed to support factually. It is certainly reasonable that Henneberry [plaintiff] could present evidence that he relied on Graustein [defendant]'s promise that the deal would close when that statement was made in the context of the bridge loan. Thus, taking all allegations as true, and resolving all ambiguity in favor of the plaintiff ... and because this claim is not 'plainly defective' ... the Court cannot find that Henneberry was unreasonable in relying on Graustein's statement. Moreover ... the Court also finds Henneberry meets the foreseeability aspect of this element, and that he also shows sufficiently at this stage of the proceedings that he relied to his detriment on the promise. Thus, Henneberry's claim of promissory estoppel as to defendants' alleged promise to make the $ 3-5MM Investment survives.

Id., at *30-31. Henneberry is similar to the instant case where, on numerous occasions, Defendants kept assuring Plaintiffs that each deal would close. In connection with investments by others, in Henneberry, this Court also found that:

> [G]iven the context of the alleged promises and making all inferences in favor of the plaintiff, it is reasonable that Henneberry believed SCOA [defendant] had control over Union Square [prospective investor] such that the promises by Frank [defendant] and Graustein could be relied upon. Moreover, if accepted as true, the communications Henneberry had with Frank and Graustein shows that SCOA was put on notice by Henneberry that he would be making the loans. His action was directly related to SCOA's promise ... and thus the foreseeability of those loans is also properly alleged.

Id., at *36-37. Similarly, it is reasonable that Plaintiffs believed Marra had control over the various people named in the Amended Complaint and John Doe Company.

Plaintiffs also sufficiently plead that they suffered injuries by reason of their reliance: without knowing that the investments would not be made, they did certain things, including spending money; they also suffered damages to their business and reputation. (Am. Com. ¶¶ 12-22, 48 and 52) "Each of those loans was made prior to Henneberry being informed that the Union Square investment would not close. Consequently, Henneberry has pleaded sufficiently his detrimental reliance on defendants' promise." Id., at *37.

---

[2] The wire was never actually ordered and the receipt Defendants showed to Plaintiffs turned out to be fake.

As to the second promise, Plaintiffs allege that Marra promised to invest in MP.  There were numerous confirmations of said promise, both verbal and written, during the course of several months. Defendants' promise was clear and unambiguous.  At this stage, Plaintiffs do not have to submit any evidence of clear and unambiguous promise as long as they plead that there was a promise and the basic terms of that promise.  Since said promise was reiterated on numerous occasions, Plaintiffs acted and notified Defendants of their actions in reliance, and Defendants induced Plaintiffs to act, reliance was reasonable and foreseeable. (Am. Com. ¶¶ 23-33, 48 and 52)

The third promise to invest 320,000 Euro in MP was also reiterated on numerous occasions during the course of several weeks.  This transaction also came to an end when Defendants, through their agents or associates, again "wired" funds to Plaintiffs except that the receipts they showed to Plaintiffs were forgeries as the wires were never ordered. (Am. Com. ¶¶ 34-40, 48 and 52) This makes Plaintiffs' reliance reasonable and foreseeable.

Similarly, Plaintiffs' claim for promissory estoppel in connection with Defendants' fourth promise is well pleaded. (Am. Com. ¶¶ 41-48 and 52)

In connection with each promise, Plaintiffs sent Defendants hundreds of pages of MP's corporate and financial highly confidential and sensitive documents. Plaintiffs would not have sent those documents had they known that Defendants were not going to invest.

Defendants contend that Plaintiffs' reliance was not justified.  "Whether Plaintiffs' reliance was justified is a factor which should be analyzed at a later stage, not the pleading stage. Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent representation is justified generally raises an issue of fact." Kimmell v. Shaefer, 89 N.Y.2d 257, 264 (Ct. App. 1996).

Defendants rely on <u>R.G. Group Inc. v. Horn & Hardart Co.</u>, 751 F.2d 69 (2d Cir. 1984), where the Court stated that liability is imposed on those persons who are in a special position of confidence and trust with the injured party such that reliance is justified. <u>R.G. Group</u> does not apply to this case since it deals with a motion for summary judgment, not a motion to dismiss. Plaintiffs would satisfy even the standard of <u>R.G. Group</u> since Defendants had a special position of confidence and trust in that they requested and received MP's business plan together with corporate and financial highly sensitive records. This alone makes Plaintiffs' reliance justified. But there is more: Defendants reiterated their promises over and over; when Plaintiffs asked for assurances, Defendants promptly assured them; Marra often referred to Peracchino as his beloved friend, even in business contexts; Defendants induced Plaintiffs to do certain things; before Plaintiffs acted on the promises they received, they first informed Marra.

Defendants allege that Count II of the Amended Complaint is "fatally flawed" because Plaintiffs do not mention that reliance was reasonable. Plaintiffs allege many facts which make their reliance reasonable.[3] Again, Defendants mistakenly rely on <u>Reprosystem</u>, *supra*, where it was clear that Defendants would consummate the deal only upon execution of a formal contract and plaintiff could not point out to any promise by defendant. This is why in <u>Reprosystem</u> plaintiff's case was "fatally flawed." Here, Plaintiffs point out to many clear promises and there is no evidence that the parties would be bound only by a formal agreement.

Defendants also rely on to <u>S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.</u>, 84 F.3d 629 (2d Cir. 1996). <u>S.Q.K.F.C.</u> is different from the instant case because "the majority of S.Q.K.F.C. [plaintiff]'s allegations are belied by the exhibits attached to their complaint."[4] <u>Id.</u>,

---

[3]  Count II incorporates the allegations of ¶¶ 1 through 48 of the Amended Complaint.

[4]  In <u>S.Q.K.F.C.</u>, plaintiff attempted to obtain a commercial loan from defendant. Plaintiff sued defendant for fraud alleging that defendant made misleading and fraudulent representations. Defendant "is alleged to have told [plaintiff] that personal guaranties would not be required to finalize the loan. However, he followed up with a

9

at 636. Even Defendants' contention that "a reasonable consumer would not have been mislead" fails. First, MP was not a consumer vis-à-vis Defendants. Second, in S.Q.K.F.C., the Court determined that a reasonable consumer would not have been mislead because the writing made it clear that plaintiff would not have obtained the loan unless several conditions had been met.

By reason of the foregoing, Defendants' motion to dismiss must be denied.

C.    COUNT III

Plaintiffs sufficiently plead equitable estoppel.

"To establish a claim for equitable estoppel, plaintiff must show that defendant (1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct would be acted upon by the other party; (3) knew the real facts…; (4) lack of knowledge of true facts; (5) reliance upon the conduct of the party estopped; and (6) a prejudicial change in his position." Jofen v. Epoch Biosciences, Inc., 2002 U.S. Dist. LEXIS 12189, at *24 (SDNY June 26, 2002).

Plaintiffs allege that: (1) on numerous occasions, Defendants falsely represented that they would invest in MP and they concealed that instead they would not invest (they even concealed the fact that the money they allegedly wired was not there); (2) Defendants intended that such conduct would be acted upon by the Plaintiffs (Defendants orchestrated a complex scheme with the intention of inducing Plaintiffs to act; Defendants promises were reiterated several times; Defendants knew that Plaintiffs were relying on each promise because Defendants were on notice of Plaintiffs' actions at all times); (3) Defendants knew that they would not invest in MP; (4) Plaintiffs did not know that Defendants would not invest, otherwise they would not have

---

written proposal that made it clear that several conditions had to be met before [defendant] could make a firm offer. The proposal explicitly stated that it did not constitute a commitment by [defendant], and that several conditions would have to be met before a loan was approved… The very conditional nature of this proposal undermines the allegations that [defendant] was trying to mislead [plaintiff] into believing that the deal was final.…a review of the

spent money in reliance and would not have sent Defendants sensitive and highly confidential

documents; (5) they reasonably relied on Defendants' promises (*see* Count II above); and (6)

they changed position by spending money in reliance and by sending documents to Defendants,

to their detriment.

By reason of the foregoing, Defendants' motion to dismiss Count III must be denied.

D.     COUNT IV

Plaintiffs plead fraud with particularity. Therefore, Defendants' motion to dismiss Count

IV of the Amended Complaint must be denied.

Defendants state that the elements of fraud are (1) a material false representation, (2)

made with the intent to defraud, (3) reliance on the representation, (4) to the detriment of the

plaintiff. (Def. Mem., p. 14); *see also* Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp.2d

609, 617 (SDNY 2003).  In order to plead fraud plaintiff needs only comply with Rule 9(b):

> To pass muster under rule 9(b), the complaint must allege the time, place, speaker,
> and sometimes even the content of the alleged misrepresentation. Although
> scienter need not be alleged with great specificity, there must be some factual
> basis for conclusory allegations of intent. Allegations of scienter are sufficient if
> supported by facts giving rise to a strong inference of fraudulent intent. Ouaknine
> v. MacFarlane, 897 F.2d 75, 79-80 (2d Cir. 1990). A 'strong inference of
> fraudulent intent,' in turn, can be pleaded in one of two ways: First, the plaintiff
> may allege a motive for committing fraud and a clear opportunity for doing so.
> Second, where motive is not apparent, it is still possible to plead scienter by
> identifying circumstances indicating conscious behavior by the defendant, though
> the strength of the circumstantial allegations must be correspondingly greater.
> Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995).... The Complaint
> plainly meets this standard.  Zsidisin [plaintiff] has alleged four
> misrepresentations and has explained their content, who made them (Liebowitz),
> when they were made (at the March 2000 meeting), where they were made (at a
> restaurant, with Karen Lewis present), and why they were made (to induce
> Zsidisin to form a company with Liebowitz). ... [Plaintiff] has alleged
> Liebowitz's state of mind generally ... ("The aforesaid statements and
> representations made by Liebowitz were false and were made with the intent that
> Mr. Zsidisin rely thereon."), and he has identified a motive and opportunity to
> commit fraud (taking advantage of both Zsidisin's lack of finances and his

documents ... attached to S.Q.K.F.C.'s complaint, severely undercuts any inference of fraudulent intent." Id., at 634.

exuberance for all things space-related, … in order to obtain Zsidisin's business concept and his aid in developing it. … This is all that Rule 9(b) requires.

Id., at 617 and 618.

Plaintiffs allege that: (1) Defendants made fraudulent representations in connection with each investment; (2) the representations were made by Marra, in addition to Zinni, Piana, Michelucci, Toccafondi and Lupi, all of whom did so as agents for Marra; (3) the representations were made on numerous occasions, including the office of Zinni in Milan in September 2004, the event in Turin in August 2005, as well as numerous other times over the phone while Marra was in New York, and in writing throughout Spring and Summer 2005, as well as in Spring 2006; (4) the representations were made so that Plaintiffs would pay money to Defendants and because Defendants intended to damage the core and reputation of Plaintiffs' business; this was also the motive and opportunity to commit fraud; (5) Defendants made the representations knowing them to be false and they were made with the intent that Plaintiffs rely. (Am. Com. ¶¶ 9-48 and 56) This is all that Rule 9(b) requires. Astroworks, at 618.

Defendants rely on Chanayil v. Gulati in which the Second Circuit reversed the dismissal of the fraud claim because plaintiff sufficiently pled it. Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999). In Chanayil, plaintiff broadly alleged that "defendants, with the intent to defraud, characterized the Gulati segment as a pro bono feature and a public service to the Indian-American community without disclosing the fact that Gulati paid for the segment, thereby inducing plaintiffs' reliance and causing injury." This was sufficient to plead fraud. Id. The issue is not whether plaintiff will ultimately prevail but whether plaintiff is entitled to offer evidence to support the claim. Id. Plaintiffs' sufficient allegations in Chanayil are certainly less detailed than Plaintiffs' allegations in the instant case. Therefore, Defendants' motion should be denied.

Defendants argue that Plaintiffs fail to aver any motive for Marra's fraudulent actions.

12

Contrary to Defendants' allegations, Plaintiffs aver the motive for Marra's actions: Marra induced Plaintiffs to act while enriching himself with Plaintiffs' money and their near destruction to his advantage. (Am. Com. ¶¶ 9-48 and 56) At the very least, Defendants acted recklessly as they induced Plaintiffs to act knowing that Plaintiffs would act and pulled out of the investment without explanations. Additionally, Defendants are culpable of fraudulent concealment since they omitted to tell Plaintiffs that they would not invest. Defendants had a duty to disclose because they made partial or ambiguous statements, Defendants stood in a fiduciary duty or confidential relationship with Plaintiffs, and they had superior knowledge and knew that Plaintiffs were acting on the basis of mistaken knowledge.

The instant case is distinguishable from Shields v. Citytrust Bancorp Inc., 25 F.3d 1124 (2d Cir. 1994), cited by Defendants, where plaintiff failed to plead conscious fraudulent behavior or recklessness where she simply pleaded that defendants had predicted a prosperous future; "misguided optimism is not a cause of action, and does not support an inference of fraud." Id., at 1129. Shields did not allege that defendant's representations were incompatible with the data available at the time the representations were made. Id. Here, at the time Defendants made the representations, they knew that the representations were false; this is proven by the fact that the investments were not made notwithstanding continuous reassurances and even fake wire transfers. Clearly this is more than "misguided optimism." Moreover, in Shields plaintiff alleged that motive was the executives' intention to protect their job; this is not a real motive. Id., at 1130. In the instant case, Defendants received benefits: (1) the money Plaintiffs paid to Marra, and (2) the fact that Plaintiffs' business, which competes with Marra's business, was nearly destroyed by Defendants. Plaintiffs' reliance was reasonable. (See analysis in Count II above)

By reason of the foregoing, Defendants' motion must be denied.

13

E.    COUNT V

Plaintiff sufficiently plead negligent misrepresentation.

"Under New York law, a claim for negligent misrepresentation lies where (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Henneberry, *supra*, at *38.

"[W]hether a special relationship exists is highly fact-specific and 'generally not susceptible to resolution at the pleadings stage.'" Manhattan Motorcars, at *46 (quoting Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp.2d 514, 536 (SDNY 2001)).

In any event, Plaintiffs, without knowledge, asked for and were given assurances from the Defendants, who had exclusive knowledge. "'[T]he New York Court of Appeals has observed that a relationship sufficiently special to justify reliance (and a subsequent action for negligent misrepresentation) may arise when a person 'wholly without knowledge seek[s] assurances from one with exclusive knowledge.'" Henneberry, at *45 (quoting Eternity, *supra*, at 189). "Henneberry's allegations paint a picture in which SCOA perhaps failed to be fully candid with him concerning their intentions of making additional investments, as well as their dealings with Union Square. SCOA allegedly had exclusive knowledge of these topics, and, consequently, Henneberry relied on its representations." Id. Additionally, here, a confidential relationship exists because Defendants requested and Plaintiffs provided highly sensitive information and documents concerning MP, while Plaintiffs were clearly in a position of "dependency" with respect to Defendants since Plaintiffs needed funds. Manhattan Motorcars,

14

*supra*, at *33. Lastly, on numerous occasions, Marra referred to Peracchino as his beloved friend even in a business context and even when communicating with his agents or associates. Therefore, the Court must find that this element of the claim is met by Plaintiffs.

Plaintiffs also meet the second element of negligent misrepresentation since Defendants' misrepresentations were factual. Defendants, through Zinni, on April 11, 2005, confirmed that funds had been wired. (Am. Com. ¶ 17) Moreover, Defendants promised that "now our money is coming". (Am. Com. ¶ 26) (emphasis added) Lastly, Lupi, on behalf of Marra, insisted that Plaintiffs cover the initial cost of an event, "while the funds were forthcoming." (Am. Com. ¶ 38)

By reason of the foregoing, Defendants' motion to dismiss must be denied.[5]

F.    COUNT VI

Defendants contend that the claim of unjust enrichment should be dismissed because Plaintiffs do not allege the benefit or enrichment obtained by Defendants.[6] Contrary to Defendants' allegations, Plaintiffs plead that Defendants (1) received money and (2) benefited from MP's near ruin.  (Am. Com. ¶¶ 9-48 and 60)

G.    COUNT VII

Defendants argue that Plaintiffs' claim for breach of fiduciary duty should be dismissed because Plaintiffs do not allege that a fiduciary relationship existed between Plaintiffs and Defendants. Contrary to Defendants' allegations, Plaintiffs adequately plead that a fiduciary relationship existed (*see* analysis in Counts II, IV and V above). (Am. Com. ¶ 62)

---

[5] Defendants do not argue that the remaining elements are not sufficiently pleaded by Plaintiffs.  In the event that Defendants raise additional arguments in their Reply, those arguments should be ignored. The Republic of Colombia v. Diageo North America Inc., 2007 U.S. Dist. LEXIS 44366 (EDNY June 19, 2007).

[6] Defendants do not argue that unjust enrichment cannot be pleaded in the presence of a contract.  Nevertheless, Plaintiffs wish to point out that since Defendants dispute that there was a contract with Plaintiffs, Plaintiffs are entitled to plead unjust enrichment in the alternative. Astroworks, *supra*, at 620-1.

H.    COUNT VIII and COUNT IX

Plaintiffs' hereby withdraw, without prejudice, the claims in Counts VIII and IX.

I.    COUNT X

Defendants contend that since none of the Counts in the Amended Complaint state a

claim upon which relief may be granted, Plaintiffs' claim for punitive damages fails.  Since

Plaintiffs adequately plead Counts I through VII, their demand for punitive damages is proper.

**POINT II**
**NEW YORK IS THE PROPER FORUM**

Defendants seek dismissal of this action on the ground that New York is an exceedingly

inconvenient forum and venue is better reposed in Italy.  Plaintiffs will show that New York is

the proper forum for this litigation.

"The decision as to whether to dismiss a case on forum non conveniens grounds is trusted

to the sound discretion of the trial court."  The Republic of Colombia, *supra*, at *83 (citing

Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001)).  Courts should follow a three-

step process when exercising this discretion:

> 'At step one, a court determines the degree of deference properly accorded the
> plaintiff's choice of forum. At step two, it considers whether the alternative forum
> proposed by the defendants is adequate to adjudicate the parties' dispute. Finally,
> at step three, a court balances the private and public interests implicated in the
> choice of forum.'

Id. (quoting Norex Petroleum Ltd. v. Access. Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005).

"Any review of a forum non conveniens motion starts with 'a strong presumption in favor

of the plaintiff's choice of forum.'"  Norex, at 154 (quoting Piper Aircraft Co. v. Reyno, 454 U.S.

235, 255 (1981)).  "Indeed, it is generally understood that, 'unless the balance is **strongly** in

favor of the defendant, the plaintiff's choice of forum should **rarely** be disturbed.'"  Id. (quoting

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)) (emphasis added).  ""[T]he degree of

deference given to a plaintiff's forum choice [can vary] with the circumstances.' ... 'the degree

of deference to be given to a plaintiff's choice of forum moves on a sliding scale' depending on

the degree of convenience reflected by the choice in a given case." Id. (quoting Iragorri, at 71).

Courts should consider the totality of circumstances supporting a plaintiff's choice of forum:

> The more it appears that a domestic or foreign plaintiff's choice of forum has
> been dictated by reasons that the law recognizes as valid, the greater the deference
> that will be given to the plaintiff's forum choice. Stated differently, the greater the
> plaintiff's or the lawsuit's bona fide connection to the United States and to the
> forum of choice and the more it appears that considerations of convenience favor
> the conduct of the lawsuit in the United States, the more difficult it will be for the
> defendant to gain dismissal for forum non conveniens. Thus, factors that argue
> against forum non conveniens dismissal include the convenience of the plaintiff's
> residence in relation to the chosen forum, the availability of witnesses or evidence
> to the forum district, the defendant's amenability to suit in the forum district, the
> availability of appropriate legal assistance, and other reasons relating to
> convenience or expense. On the other hand, the more it appears that the plaintiff's
> choice of a U.S. forum was motivated by forum-shopping reasons--such as
> attempts to win a tactical advantage resulting form local laws that favor the
> plaintiff's case, the habitual generosity of juries in the United States or in the
> forum district, the plaintiff's popularity or the defendant's unpopularity in the
> region, or the inconvenience and expense to the defendant resulting from
> litigation in that forum--the less deference the plaintiff's choice commands and,
> consequently, the easier it becomes for the defendant to succeed on a forum non
> conveniens motion by showing that convenience would be better served by
> litigating in another country's courts.

The Republic of Colombia, at *85-86 (quoting Iragorri, at 71-72 (footnote omitted)).

This Court should give great deference to Plaintiffs' choice of forum for the following

reasons. First, Plaintiffs sue in New York because Defendants reside in New York. Italian Courts

do not have jurisdiction over Defendants since they are not domiciled in or resident of Italy.  Had

Plaintiffs sued in Italy, the Italian Court would have dismissed the suit for lack of jurisdiction.

(Cane Aff. ¶¶ 3 and 4) Even if Defendants submit to the jurisdiction of Italian Courts that "does

not alter the fact that plaintiff's own choice of New York forum rather than its home forum was

motivated by genuine jurisdictional convenience and, as such, merits 'substantial deference' on

any sliding scale analysis." <u>Norex</u>, at 156 (quoting <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 74 (2d Cir. 2003)).

Second, while Defendants allege that "almost all of the potential witnesses are located either in Italy, Monaco or San Marino" (Def. Mem., p. 23), many of the people named in the Amended Complaint are nowhere to be found, at least in Italy.[7] Moreover, the fact that a witness may be in Monte Carlo or San Marino does not make that witness more available in Italy than in New York. Monte Carlo and San Marino are not part of Italy and are separate countries and jurisdictions. Therefore, contrary to Defendants' arguments, Italy is not a better forum with respect to availability of witnesses.

Third, Plaintiffs are in possession of evidence against Defendants; the evidence they do not have is in the hands of Defendants in New York. Marra masterminded a complex scheme against Plaintiffs while in New York. In order to most efficiently gather evidence against Defendants, it would make sense to bring a claim in New York. While Plaintiffs *might* obtain at least some evidence from Defendants by bringing suit in Italy, Plaintiffs "reasonably concluded that the easiest way to obtain evidence from American Defendants is to retain American lawyers to seek discovery from them in an American court." <u>The Republic of Colombia</u>, *supra*, at *91.

The remaining convenience factors identified in <u>Iragorri</u> warrant no different conclusion.[8] Accordingly, even if Plaintiffs, as foreign parties, are not entitled to the same high deference for their New York forum choice as a resident plaintiff, the totality of Iragorri factors strongly suggests that Plaintiffs' choice warrants substantial deference. <u>Norex</u>, at 155.

---

[7] The following associates/agents of Marra are nowhere to be found: Riccardo Piana (he could be in the U.S.)(Am. Comp. ¶ 16); Armando Miccoli (Am. Comp. ¶ 33); Sergio Lupi (Am. Comp. ¶ 39).

[8] Defendants present a laundry list of factors which, they argue, warrant dismissal of this action. Said factors do not warrant dismissal. For instance, Marra is a U.S. citizen who speaks perfect English; the fact that the currency used by the parties for the deals was in Euro is totally irrelevant; the fact that many events occurred in Europe does not make this forum less convenient than Italy especially since Marra and John Doe Company are both in New York, from where they orchestrated the scheme.

18

The record reveals a number of circumstances demonstrating that genuine convenience informed Plaintiffs' choice of a New York forum. Plaintiffs could not have perfected jurisdiction over Defendants in Italy. Thus, Plaintiffs' decision to litigate in New York, where Defendants are amenable to suit is properly viewed as a strong indicator that convenience, and not tactical harassment of an adversary, informed their decision to sue outside of Italy. Id. Obtaining evidence from these Defendants in Italy would be very difficult, if not impossible, since Italian Courts sanction failure to produce evidence with a 5 Euro (or $8) penalty! This makes discovery in Italy inefficient when only defendant possesses certain evidence. (Cane Aff. ¶ 6) "As a result, this factor [also] suggests that Plaintiffs selected the instant forum because it was convenient, as opposed to purely for the sake of forum shopping."[9] The Republic of Colombia, at *92.

"At step two, the defendant bears the burden of establishing that an adequate alternative forum exists" otherwise their motion will be dismissed regardless of the degree of deference which is given to Plaintiffs' forum choice. Id., at *86-87 (citing Norex, at 157). "'An alternative forum is adequate if the defendants are amendable to service of process there, and if it permits litigation of the subject matter of the dispute.'" Id. (quoting Norex, at 157).

Defendants fail to demonstrate that Italy is an adequate alternative forum. This is fatal to Defendants' motion. Norex, at 157. Since Defendants are not domiciled or resident of Italy, Italian Courts would lack jurisdiction. The fact that Defendants' counsel (not Defendants) indicated that this Court should dismiss the complaint "on the condition that Defendants submit to jurisdiction of an appropriate court in Italy" (Def. Mem., p. 24) is insufficient to demonstrate that Italy is an adequate alternative forum. Plus, the fact that Defendants could submit to the jurisdiction of the Italian Courts after the instant action was commenced in New York is

---

[9] Defendants do not argue that Plaintiffs went forum shopping or that Plaintiffs selected New York for reasons other than convenience. Defendants do not even argue that litigating in New York is inconvenient or expensive for them;

irrelevant for jurisdictional purposes since jurisdiction must exist at the time the action is commenced. (Cane Aff. ¶¶ 3-5)  Additionally, while Defendants allege that "[t]here can be no reasonable dispute that Italian courts are well versed in commercial matters and would provide a suitable forum for litigating the dispute" (Def. Mem., p. 24), they fail to support their allegations. Piper, *supra*, at 249-50.

This analysis should end here since Defendants fail to demonstrate that Italy is an adequate alternative forum.  Nevertheless, Plaintiffs will proceed with step three of the Iragorri test to further show that Defendants' motion is completely baseless.

Once defendant has established that an adequate alternative forum exists, if trial in the chosen forum would "establish . . . oppressiveness and vexation to a defendant", or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case.  Id., at 241 (quoting Koster v. Lumbersmens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). To guide trial court discretion, the Court provided a list of "private interest factors" affecting the convenience of the litigants, and a list of "public interest factors" affecting the convenience of the forum. Id. (quoting Gulf Oil, at 508-509). By affidavit, Defendants must provide enough information to enable the court to balance the parties' interests. Id., at 249-250.

Private interest factors are: "'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" The Republic of Colombia, at *85-86 (quoting Iragorri, at 73-74).

Private interest factors favor the New York forum.  Plaintiffs allege that Marra, while in

---

it would seem that it would be more convenient and cheaper for Defendants to litigate in New York.

New York, masterminded a scheme and controlled John Doe Company and his associates and agents, and identify Defendants' activities that damaged them. Plaintiffs already possess significant evidence of those activities. As a result, the most important aspect of discovery in this case will be an examination of Defendants involvement in such activities and scheme. As Marra is alleged to have managed the scheme from New York, this category of evidence will be found in New York. The Republic of Colombia, at *99-100. This suggests that it will be cheaper and more expeditious to litigate here. Id. at *101. The most important witnesses are in New York: Marra and John Doe Company, which is made of all the people named in the Amended Complaint and which is alleged to be located in New York. This Court has the power to compel the testimony of members or shareholders of a company located in New York. If Defendants prove that they have no control over those people in Italy (which is very doubtful), even if this action were tried in Italy and they might be called to testify, they are unlikely to provide truthful testimony concerning their fraudulent activities. Id.

Defendants suggest that the evidence and witnesses are probably located in Italy, San Marino and Monte Carlo where many of the facts and people are located. (Def. Mem., pp. 22-3) As a result, it appears that there could be evidence and witnesses in those places. There is no reason to believe that the instant forum or the Italian forum is more accessible to these European witnesses and evidence. Id. at *102-3. To the contrary, the Italian forum would be inadequate to compel these witnesses to testify and to order parties to produce evidence, given the very limited sanctions available under Italian law in the event that parties refuse to produce.

Defendants fail to identify the witnesses they may want to depose and, additionally, this statement is unsupported. Contrary to Defendants' unsupported argument, many of the potential witnesses are nowhere to be found and reside outside of Italy and, in any event, Italy has

virtually no compulsory power to compel attendance of unwilling witnesses. Obtaining documents here will be easy for Defendants as this Court has compulsory powers.

Overall, the evidence in this case is in New York and the balance is scattered across Europe; as a result, Italy and the instant forum are equally accessible and convenient to the evidence in this case. Id. at *104 (citing Maritima Aragua S.A. v. M/T Trade Resolve, 823 F. Supp. 143, 147 (SDNY 1993) ("the evidence and witnesses to be produced by the U.S. corporations, combined with the possibility of evidence to be produced from Germany, England, or Greece prevent the convenience of witnesses and the location of the evidence from being [particularly] determinative of the appropriate forum")).

Defendants also suggest that since MP's employees are in Italy, it would be easier to depose them in Italy. This court is, of course, capable of requiring Plaintiffs to produce employees located in Italy for depositions and/or trials. "This eliminates any concern that adjudicating the dispute in the instant forum will prevent Defendants from obtaining evidence" from MP's employees. Id. at *105.

Defendants contend that since many facts occurred in Europe and Plaintiffs' suffered damages in Europe, the Italian Court would be the preferred forum. Defendants misinterpret the facts: the scheme against Plaintiffs was organized and conducted from New York by New York Defendants; Plaintiffs' damages were also suffered in New York, where many of MP's customers are located; Defendants' benefits were had in New York. Having said that, while "[t]he instant forum has a better perspective on Defendants' United States conduct … which allegedly largely occurred here [t]his factor is not particularly significant in this case, however, because … there is little if any benefit to conducting a physical inspection of any of the stages of [Defendants' activities]", including those which occurred in Europe, and the damages. Id. at

*109; *Cf.* In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India, 634 F. Supp. 842, 860

(SDNY 1986) (finding that a physical inspection of an industrial plant in which a serious

accident had occurred "would probably not be of utmost importance").  Plaintiffs show that all of

the private interest factors favor Plaintiffs' forum selection.

> Court must also consider the following public interest factors:

> Administrative difficulties follow for courts when litigation is piled up in
> congested centers instead of being handled at its origin. Jury duty is a burden that
> ought not to be imposed upon the people of a community which has no relation to
> the litigation. In cases which touch the affairs of many persons, there is reason for
> holding the trial in their view and reach rather than in remote parts of the country
> where they can learn of it by report only. There is a local interest in having
> localized controversies decided at home. There is an appropriateness, too, in
> having the trial of a diversity case in a forum that is at home with the state law
> that must govern the case, rather than having a court in some other forum
> untangle problems in conflict of laws, and in law foreign to itself.

The Republic of Colombia, at *88-89 (quoting Iragorri, at 74).

"There is a local interest in having localized controversies decided at home."  Gulf Oil,

*supra*, at 509. Of course, claims arising out of the alleged international schemes are not

"localized controversies." Id., at *110.  Both Italy and the United States have an interest in the

controversy because the parties are Italian and American. Id. (citing Capital Currency Exch.,

N.V. v. Nat'l Westminister Bank PLC, 155 F.3d 603, 611 (2d Cir. 1998) (United States had an

interest in a case to which a New York corporation was a party, and the United Kingdom had an

interest in the case because it involved two English banks)).

New York law predominates in this dispute. Defendants are alleged to have

masterminded the tortious conduct that caused Plaintiffs' damages from New York; Plaintiffs'

numerous claims are governed by the laws of New York. Id. at *113. "[T]he law of the state in

which the conduct occurred often applies." Id. (citing Curley v. AMR Corp., 153 F.3d 5, 12 (2d

Cir. 1998) (New York choice of law rules apply and, under New York's "interest analysis,"

23

where the claim is brought under a conduct-regulating law, the law where the conduct occurred

generally applies)). Public interest ordinarily favors the enforcement of U.S. law in the U.S.

courts. Daventree Ltd. v. Republic of Azerbaijan, 349 F.Supp. 2d 736, 756 (SDNY 2004). Italy,

instead, does not seem to be interested in this case since it is irrelevant that some of the events

occurred in Italy if Defendants are not domiciled or resident in Italy. (Cane Aff. ¶ 5) Even the

public interest factors favor Plaintiffs' forum selection.

Defendants do not demonstrate why this action belongs in Italy. They do not even submit

affidavits. Defendants cite Acosta v. J.P. Morgan Chase & Co., 2007 WL 689529 (2d Cir. 2007),

and Base Metal Trading S.A. v. Russian Aluminium, 253 F. Supp.2d 681 (SDNY 2003), two

unpublished decisions. "[T]his court is not bound by a district court decision affirmed by

unpublished summary order." Norex, supra, at 157 (citing Silivanch v. Celebrity Cruises, Inc.,

333 F.3d 355, 370 n. 11 (2d Cir. 2003)) (summary order disposition is not precedential). "Base

Metal is distinguishable from this case because ... 'the record . . . points to nothing but forum

shopping by the plaintiffs.'" Base Metal, at 696. "Because no such adverse finding was made in

this case, and because the totality of circumstances suggests that Norex's decision to sue in New

York was informed by genuine convenience, we are obliged to conclude that the district court

erred in relying almost exclusively on the presumption that a foreign plaintiff's choice of a non-

home forum is inconvenient to afford Norex's choice little deference. The deference due Norex's

forum choice should have been determined in light of the sliding-scale analysis outlined in

Iragorri." Norex, at 157.

Conclusively, Plaintiffs' forum choice should be given very important deference.

Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46-47 (2d Cir. 1996) (foreign plaintiffs' selection

of New York forum entitled to deference where some witnesses located in New York and other

witnesses were located in the Far East, defendant resides in New York, and critical events occurred in New York). Defendants fail to show that Italy is an adequate alternative forum. All of the private and public interest factors favor the New York forum.

By reason of the foregoing, Defendants' motion for dismissal on the ground of forum non conveniens must also be denied.

## PLAINTIFFS' CROSS-MOTION FOR LEAVE TO AMEND THE COMPLAINT

In the event that one or more claims are dismissed, Plaintiffs move for leave to amend the complaint. The complaint Plaintiffs will file is annexed hereto as Exhibit A. Leave shall be freely given when justice so requires. FRCP 15(a). "Accordingly, the Second Circuit has followed the U.S. Supreme Court's direction that permission to amend a claim 'should be freely granted.'" Henneberry, supra, at *16 (quoting Oliver Sch., Inc. v. Foley, 930 F.2d 248, 252 (2d Cir. 1991) (citing Foman v. Davis, 371 U.S. 178, 182 (1962))).

## CONCLUSION

Defendants' motion to dismiss the Amended Complaint should be denied on all grounds. In the event that any of the counts of the Amended Complaint is dismissed, dismissal should be without prejudice and Plaintiffs should be granted leave to amend the complaint.

Dated:  August 16, 2007
New York, New York

Wuersch & Gering LLP
Attorneys for Plaintiffs

By:
Francesco Di Pietro (FD 6383)
100 Wall Street, 21st Floor
New York, New York 10005
(212) 509-5050

25