UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIA MARGHERITA PERACCHINO
and MEDIAPRESS S.R.L.,

                           Plaintiffs,                07 Civ. 3257 (LTS)

      -against-

VINCENZO MARRA and
JOHN DOE COMPANY,

                           Defendants.
-------------------------------------------------------X

## AFFIDAVIT OF MARIA MARGHERITA PERACCHINO

Pursuant to U.S.C. 28 § 1746, Maria Margherita Peracchino ("Peracchino") declares as follows:

1.     I am an individual and one of the plaintiffs in the above-captioned action. I am also the sole shareholder, director and officer of plaintiff MediaPress S.r.l. ("MP"). I make this affidavit in support of Plaintiffs' opposition to Defendants' motion to dismiss the complaint on the basis of facts which are within my personal knowledge and to which I would otherwise be competent to testify at trial.

2.     John Doe Company is a company made of several individuals, named in the Amended Complaint, among whom there is defendant Vincenzo Marra ("Marra"). Marra, the head of John Doe Company, is the one who dictates orders to the other associates or partners of John Doe Company. John Doe Company was also going to invest in MP.[1] One or more of the businesses operated by Marra also involve communications and news to and about the Italian world in the U.S. Marra had indicated to me, in August 2004, that he also intended to conduct a business similar to the one of

---

[1] Plaintiffs are not sure of the identity and form of the Joe Doe Company, or even if and when it was formed, if any, given Marra's shifting information provided to Plaintiffs.

1

MP. Marra saw a good opportunity for himself.

3. I met Marra for the first time on August 14, 2004 to discuss the possibility of an investment in MP. During the meeting, I proposed the following: (1) Marra's direct and personal investment in MP, and (2) that Marra find other investors in addition to himself. After discussions concerning the terms of such investment, Marra indicated that he was interested in investing and suggested that I contact Paolo Zinni ("Zinni"). Marra clearly indicated that Zinni was his financial consultant for the type of investment and that Zinni, on behalf of Marra, would be dealing with Plaintiffs in connection with the investment. Marra also indicated that Zinni would examine the corporate and financial books of MP and determine whether and how Marra would invest. Therefore, contrary to Defendants' allegations, Zinni's connection to Marra was not that Marra simply introduced Zinni to the Plaintiffs. It is common that a businessman, such as Marra, employs the services of financial consultants, such as Zinni, for business transactions. Defendants, however, want to make believe that Marra's only fault was to introduce Zinni to Plaintiffs. Zinni was, instead, Marra's agent and long-arm.

4. After review of MP's records and business plan by Zinni, Marra, through Zinni, accepted to invest in MP. In furtherance of said acceptance, Marra, through Zinni, "paid" 150,000 Euro with a wire transfer the receipt of which was submitted to me for assurance and subsequently was discovered to be a forgery. Zinni's wire transfer was in consideration of a loan to be repaid with interest by Plaintiffs within one year; the agreement also provided that Marra would have the option to forgo the loaned sum in exchange for 51% of MP.

5. Contrary to Defendants' allegations, Marra was kept informed both

verbally and in writing of all facts and events on a daily basis. Marra acknowledged, approved and ratified the actions of Zinni and all of his associates named in the complaint. Defendants allege that Plaintiffs fail to disclose where the parties were when Marra was informed, who did the informing and why Marra was informed. While Defendants' queries are irrelevant at this stage, Marra was in New York when he was informed by Plaintiffs and by his own associates and agents named in the complaint, and approved and ratified all actions. Marra's associates and agents kept Marra informed because they were conducting business in the name and on behalf of Marra. Even Plaintiffs kept Marra closely informed because Marra was Plaintiffs' "business partner". Marra was responsible of those actions and of the investments in MP because he was the one investing in MP. But Marra was not passive or quiet during this time, as Defendants want to make believe; on a regular basis, he was receiving from and making calls to, as well as receiving and sending correspondence, Plaintiffs and all people named in the complaint.

6.     Walter Toccafondi ("Toccafondi") was Marra's partner or associate not only in one U.S. entity, as Defendants allege, but also in other transactions, including the transactions with Plaintiffs, as well as those allegedly involving Marra's activities similar to MP's business. Toccafondi was introduced to me by Marra as his partner. There is a plethora of correspondence between the parties which involves and includes Toccafondi in connection with the transactions from which Plaintiffs claims stem. Marra and Toccafondi even visited Plaintiffs together in Turin. The promise to invest in MP which Marra made to the Plaintiffs while in Turin was thereafter confirmed and accepted by Plaintiffs on several occasions both verbally and in writing. Even though no formal

contract was signed, the terms of the contract were set and accepted by the parties: a total of 250,000 Euro (approximately $330,000) was to be invested in MP. Of this amount, 100,000 Euro was to be injected by Marra as capital contribution; 100,000 Euro was to be loaned by Marra to MP (with repayment of the principal plus interests); and the balance was to be obtained by investors or banks with the help of Marra.

7. It is important to mention that Marra requested and obtained from me MP's books and records, including, without limitation, corporate, financial and accounting books, balance sheets, and in general records reflecting MP's assets, liabilities, receivables, debts, and other obligations. The scope of this production was to afford Marra an opportunity to conduct due diligence in furtherance of the investment.

8. It is important to understand what kind of person Marra claimed to be. From the beginning, Marra claimed to be a successful businessman, a mogul. He also claimed to have numerous connections in the political and financial world of both the U.S. and Italy. Marra ostensibly made believe to be surrounded by a herd of financial advisors, accountants, and capitalists. On numerous occasions, Marra told me that he was very important in the Italian community of New York. Additionally, Marra befriended me and on numerous occasions both verbally and in writing, in business contexts, referred to me as his beloved friend. Marra had ulterior motives: since he and MP were involved in the same or similar business, he wanted to destroy me and MP.

9. Plaintiffs suffered damages both as a direct consequence of Defendants' failures as well as damages to their business and reputation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 10 2007

Maria Margherita Peracchino
Individually and on behalf of
MediaPress S.r.l.