UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

MARIA MARGHERITA PERACCHINO and
MEDIAPRESS S.R.L.,                          Civ. Action No.
                                            07 Civ. 3257 (LTS)
                    Plaintiff,

            -against-
VINCENZO MARRA and
JOHN DOE COMPANY,

                    Defendants.

-------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN REPLY
TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS'
CROSS-MOTION TO FILE A SECOND AMENDED COMPLAINT**


Leo Kayser, III (LK 3550)
KAYSER & REDFERN, LLP
515 Madison Avenue, 30th Fl.
New York, NY 10022
212-935-5057


Attorneys for Defendants

## TABLE OF CONTENTS

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . .     1

**POINT I      THE ACTION MUST BE DISMISSED DUE TO LACK
OF DIVERSITY OF CITIZENSHIP**  . . . . . . . . . .     2

**POINT II     THE COURT SHOULD DISMISS ON GROUNDS
OF FORUM NON CONVENIENS**  . . . . . . . . . . .     6

**POINT III    PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT
STILL FAILS TO STATE A CLAIM UPON WHICH
RELIEF
CAN BE GRANTED**  . . . . . . . . . . . . . . . .    10

A. Count I of the proposed Second Amended Complaint   . .    10

B. Counts II, III and IV of the proposed Second
Amended Complaint  . . . . . . . . . . . . . . . .    16

C. Count IV of the proposed Second Amended Complaint   . .    20

D. Count VII of the proposed Second Amended Complaint   .    20

**POINT IV     THE CROSS-MOTION TO FILE THE SECOND AMENDED
COMPLAINT SHOULD BE DENIED AS FUTILE**  . . . . . .    24

**CONCLUSION**  . . . . . . . . . . . . . . . . . . . . . .    24

i

## TABLE OF AUTHORITIES

Page

Chappelle v. Beacon Communications, Corp.,
      863 F.Supp. 179 (S.D.N.Y. 1994) appeal dismissed,
      84 F.3d 642 (2d Cir. 1996) . . . . . . . . . . . . . . .   3

Corporacion Venezolana De Formento v. Merban Corporation
      449 U.S. 1080 (1981)   . . . . . . . . . . . . . . .   6

Corporacian Venezolana De Formento v. Vintero Sales
      Corporation, 629 F.2d 786 (2d Cir. 1980)   . . . . . .  5-6

Eternity Global Master Fund, Ltd. v. Morgan
      Guaranty Trust Co.,
      375 F.3d 168, 187-188 (2d Cir. 2004)   . . . . . . . .  23

Gefen v. Upjohn Company, 893 F.Supp. 471, 473
      (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . .   4

Henneberry v. Sumitomo Corp. Of America
      2007 WL 2068346 (S.D.N.Y. 2007) . . . . . . . . . .  16

Indyk v. Habib Bank Ltd.
      694 F.2d 54, 57 (2d. Cir. 1982) . . . . . . . . . .  20

Jenkins v. Virgin Atlantic Airways, Ltd.,
      46 F.Supp. 271, 273-274 (S.D.N.Y. 1999) . . . . . . .   5

Kaufman and Broad, Inc. v. Gootrad,
      397 F.Supp. 1054, 1055 (S.D.N.Y. 1975)   . . . . . . .   4

Newman-Green, Inc. v. Alfonzo-Larrain,
      490 U.S. 826, 828 (1989) . . . . . . . . . . . . . .   4

Slavenburg Corp. v. Rudes
      86 A.D.2d 517 (1st Dept. 1982)   . . . . . . . . . .  13

Smith v. O'Connor, 901 F.Supp. 644, 650 (S.D.N.Y. 1995)   .  24

Suchem v. Central Aguirre Sugar Co.,
      52 F.R.D. 348 (D. Puerto Rico 1971) . . . . . . . . .   6

Tierney v. Omnicom
      2007 WL 2012412 (S.D.N.Y. 2007) . . . . . . . . . . .12,15

## STATUTES & RULES

<u>Page</u>

28 U.S.C. §1332(a)(1)   . . . . . . . . . . . . . . . . <u>    </u>4

28 U.S.C. §1332(a)(2)   . . . . . . . . . . . . . . . .    4

New York General Obligations Law §5-701(1) and (2)    . . . 13,17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

MARIA MARGHERITA PERACCHINO and
MEDIAPRESS S.R.L.,                              Civ. Action No.
                                               07 Civ. 3257 (LTS)
                    Plaintiff,

         -against-
VINCENZO MARRA and
JOHN DOE COMPANY,

                    Defendants.

--------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN REPLY
TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION TO FILE A
SECOND AMENDED COMPLAINT**


    This Memorandum of Law is respectfully submitted both in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss and also is in opposition to Plaintiffs' Cross-Motion for leave to amend again their Amended Complaint.

<u>Preliminary Statement</u>

    Plaintiffs have withdrawn their claims for tortuous interference with contracts contained in Count VIII and tortuous interference with prospective economic advantage contained in Count IX of their Amended Complaint. Pltfs. Memorandum[1], p.16. Furthermore,

---

[1] "Pltfs. Memorandum" refers to the "Memorandum of Law In Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss and In Support of Plaintiffs' Cross-Motion For Leave to Amend the Complaint" served by Plaintiffs.

Plaintiffs tacitly accept that their Count X claim for punitive damages does not stand alone as a claim and could only survive as a remedy if appropriate to some other count in the Amended Complaint. Pltf. Memorandum, p.16.

Also, Plaintiffs have now supplemented their Amended Complaint with the declaration executed August 10, 2007, (misdenominated an affidavit) of Plaintiff, Maria Margherita Peracchino ("Peracchino Declaration") and have also cross-moved to serve a Second Amended Complaint, which incorporates the additional assertions of Peracchino. However, the proposed Second Amended Complaint also fails to state any claim upon which relief can be granted.

Plaintiffs have also submitted the Declaration of Giovanni Cane executed August 8, 2007, ("Cane Declaration") (also misdenominated as an affidavit), which, having raised issues based upon Defendants' domicile, has resulted in Defendants' counsel's investigation into defendant, Vincenzo Marra's ("Marra") domicile and citizenship[2]. As a result of such investigation, Defendants have determined this Court lacks subject matter jurisdiction.

### POINT I

### THE ACTION MUST BE DISMISSED DUE TO LACK OF DIVERSITY OF CITIZENSHIP

Plaintiff Peracchino is a citizen of Italy. ¶3 Amended

---

[2]Plaintiffs' new description of defendant John Doe Company also mandates dismissal for lack of subject matter jurisdiction.

2

Complaint.  Plaintiff MP is organized and existing under the laws of Italy. ¶4 Amended Complaint.

Defendant Marra has dual citizenship, being a citizen both of the United States through naturalization in 1988, Affidavit of Vincenzo Marra in Further Support of Motion to Dismiss Complaint sworn to August 24, 2007, ("Marra Aff.") (Marra Aff., ¶1) as well as a citizen of Italy, where he was born in 1948. (Marra Aff., ¶3). Marra's domicile is Rome, Italy, where he resides in the same home as he was born. (Marra Aff., ¶3).  As such, he holds both an American and an Italian passport.  His Italian passport, Ex. 1, Marra Aff., evidences his Italian citizenship. For the last three (3) years, the time period relevant to Plaintiffs' claims, Marra's wife and daughter have been living at his Rome home, spending about ninety (90%) percent of their time there. (Marra Aff., ¶3).  Marra, himself, estimates that he spends about half his time at his home in Rome.  He votes in both New York and Rome, Italy.  Marra Aff., ¶3.

Since Marra has two residences, one in New York and another in Rome, it is Marra's intent which governs which residence constitutes his domicile, Chappelle v. Beacon Communications, Corp., 863 F.Supp. 179 (S.D.N.Y. 1994), appeal dismissed, 84 F.3d 652 (2d Cir. 1996).

> "Even though a party may have several places
> of residences, he or she may have only one
> domicile at a given time.[Citations omitted]
> Generally, a 'domicile' is distinguished
> from a 'residence' by the permanency and
> scope of the party's presence there.
> Domicile may be thought of as a person's

3

> 'home'.  It is 'the place where a person
> dwells and which is the center of his
> domestic, social and civil life. [Citations
> omitted] Specifically, '[d]omicile requires
> (1) the party's physical presence in the
> state; (2) the intent to remain in that
> state indefinitely." [Citations omitted]
>                    . . .
> "Where as here, a party has maintained more
> than one residence, the Court should focus
> on the party's intent.   . . ."

Even if Marra had only United States Citizenship, due to the
fact that his domicile is in Rome, Italy, Plaintiffs would lack
diversity of citizenship with Marra. Kaufman and Broad, Inc. v.
Gootrad, 397 F.Supp. 1054, 1055 (S.D.N.Y. 1975), holding:

> "28 U.S.C. §1332(a)(1) requires that a party
> be a citizen both of the United States and
> one of the States, and it therefore has been
> consistently held that a diversity suit may
> not be brought against a United States
> citizen who is domiciled in a foreign
> country. 13 C. Wright, A. Miller & E.
> Cooper, Federal Practice and Procedure,
> §3621 (1975)."

Accord, Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828
(1989).

However, Marra's Italian citizenship simply makes incon-
testable the fact that diversity of citizenship does not exist in this
case.  28 U.S.C. §1332(a)(2) does not allow an American citizen with
dual citizenship to bring suit to assert his or her alienage in order
to confer a federal court with diversity jurisdiction, Gefen v. Upjohn
Company, 893 F.Supp. 471, 473 (E.D. Pa. 1995), even when that U.S.
citizen has a domicile outside the United States.  In the case at bar,
Marra's Italian citizenship demonstrates a per se lack of diversity

4

of citizenship with another Italian citizen, since diversity must be complete and shared Italian citizenship on both sides of a case destroys diversity.  <u>Jenkins v. Virgin Atlantic Airways, Ltd.</u>, 46 F.Supp. 271, 273-274 (S.D.N.Y. 1999).

Furthermore, Plaintiffs have redefined their definition of Defendant John Doe Company.  Peracchino now describes John Doe Company as:

> ". . . a company made of several individuals named in the Amended Complaint, among whom there is defendant Vincenzo Marra ('Marra'). Marra, the head of John Doe Company, is the one who dictates orders to the other associates or partners of John Doe Company." (Peracchino Declaration, ¶2).

John Doe Company does not exist as a corporation or limited liability company.  Marra Aff., ¶6. Rather it would appear that John Doe Company is a name given by Plaintiffs to what they aver as an amorphous "joint venture" or "partnership" made up of the various actors described in the pleadings, with Marra directing the participants. Peracchino Declaration, fn.1.  While the Plaintiffs do not aver what the consideration paid to any of the participants is to induce them to act in concert or at the direction of Marra, it would appear that John Doe Company's structure is reduced to some loose partnership or unincorporated association composed of the named participants, most if not all of whom are Italian citizens.  It takes only one of these alien participants in the John Doe Company, a partnership or unincorporated association, to destroy diversity. <u>Corporacion Venezolana De Formento v. Vintero Sales Corporation</u>, 629 F.2d 786 (2d

Cir. 1980), <u>cert denied</u>. <u>sub nom</u>, <u>Corporacion Venezolana De Formento v. Merban Corporation</u>, 449 U.S. 1080 (1981) (Aliens on two sides of a case destroys diversity jurisdiction.). <u>Suchem v. Central Aguirre Sugar Co.</u>, 52 F.R.D. 348 (D. Puerto Rico 1971). (Members' citizenship in an unincorporated association can destroy complete diversity.)

**POINT II**

**THE COURT SHOULD DISMISS ON GROUNDS OF FORUM NON CONVENIENS**

The Cane Declaration submitted by Plaintiffs in opposition to dismissal on grounds of <u>forum non conveniens</u> is premised upon several factual misconceptions.  The first, and probably most glaring misconception, is that Marra is not amenable to process in Italy because he purportedly was not an Italian citizen nor was domiciled in Italy. Cane Declaration, ¶¶3-5.  Cane apparently also was unaware that not only Defendant Marra, but various other members of or participants in John Doe Company, as defined by Plaintiffs: namely Paolo Zinni ("Zinni"), Amando Miccoli ("Miccoli"), Guilano Michelucci ("Michelucci"), Ricci and Riccardo Piana ("Piana"), are all already subject to jurisdiction of an Italian Court through a proceeding initiated by Plaintiffs in Italy on March 22, 2007, about a month

prior to the filing of the action in this Court.[3]   The Italian proceeding, according to the party admission by Plaintiffs in the form of a press release issued by Peracchino and published by MP, was initiated by Plaintiffs against the afore-named individuals. Ex. 2, Marra Aff.  The criminal complaint MP and Peracchino filed with the Procura della Republica di Torino was then transferred to IVREA, the prosecutorial office with proper jurisdiction. Marra Aff. ¶4. Thus, the Italian courts are already exercising jurisdiction over not only Marra, but many others who are named as participants in the averred scheme in the Amended Complaint.

The Italian courts also have authority to exercise jurisdiction in civil actions when Italy is the place where either (i) a contractual obligation is to be performed or (ii) the damage caused by a tort has occurred. Declaration of Claudio Camilli dated September 11, 2007, ("Camilla Declaration") pp.1-2.

The current proceedings in Italy also moot the concern expressed in the Cane Declaration that an Italian court would be ineffective in exercising its subpoena power, in Plaintiffs' effort to persuade this Court that Italian courts are incapable of administering effectively mechanisms to ensure the due process of law. In fact, Italian courts are effective in the administration of the law

---

[3]The Italian proceeding is in the posture of a criminal complaint, and it is not altogether clear that as such, the earlier Italian proceeding alone would be grounds to dismiss or stay this action.

in civil litigation and have adequate measures to compel testimony of non-party witnesses. Camilli Declaration, p.2.

Also, in an effort to provide Plaintiffs some reasonable rationale for why an Italian citizen and domiciliary and an Italian corporation with its principle place of business situated in Italy would choose a New York court to sue another Italian citizen and a group of Italians under the designation of John Doe Company, who would already be subjected to the jurisdiction of an Italian court in a proceeding initiated a month before the filing of this action, Cane offers, the unsupported opinion that any, Italian judgment obtained by Plaintiffs would have to be brought to New York for enforcement. Plaintiffs, in fact, have no more knowledge of the location of Marra's assets in New York than Italy. That Marra resides in Rome in the same home for fifty-nine (59) years is a basis for Cane to speculate that Marra has significant assets in Italy, just as he is speculating on the location of Marra's assets in New York. John Doe Company, which only seems to exist as a theoretical entity comprised mostly of Italian domiciliaries and otherwise does not exist, would not have assets separate from its members and/or participants.

In any event, since it is somewhat premature to be conducting sub-pro proceedings to determine the location of assets, Cane's speculation on the location of Defendants' assets is not a valid reason for initiating a proceeding against Defendants in New York, any more than Italy.

Plaintiffs' assertion that certain witnesses, are nowhere

8

to be found or may be located in New York, not only is pure speculation, such a claim disregards where these witnesses are averred to have participated in the activities described in the Plaintiffs' pleadings and ignores that several are already under process of an Italian Court.  Piana and Miccoli, who in fn. 7 of Pltfs. Memorandum, p.18, are stated to be "nowhere to be found", are already parties to the proceeding Plaintiffs initiated in Italy.

Plaintiffs' assertion that their injury primarily occurred in New York because this is where some of their readers are located ignores that they were seeking to obtain financing in Italy and that they are domiciled in Italy and operate primarily in Italy, where MP rented its office, hired its employees and published its newsletter.

Plaintiffs take only sporadic issue with the very real fact that most of the witnesses are Italian speaking, most documents are in Italian and most witnesses are found in Italy.

Plaintiffs take the position, Pltfs. Memorandum, p.23, that New York law governs the claims they assert based upon New York's interest analysis.  While the Plaintiffs' pleading suggests that Italy has the greatest interest and a New York forum would apply Italian law, Defendants shall use New York law for analyzing the sufficiency of the pleading including the proposed Second Amended Complaint, under Point III, _infra_, since Plaintiffs currently are asserting that New York law "predominates in the dispute". Pltfs. Memorandum, p.23.

**POINT III**

**PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT STILL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiffs have cross-moved, in tacit admission of the inadequacies contained in their Amended Complaint, for leave to file a Second Amended Complaint. Defendants shall address the proposed Second Amended Complaint as if it were the operative pleading to show that it also fails to state a claim upon which relief can be granted and that concomitantly, the cross-motion should be denied and the action should be dismissed in its entirety. The Peracchino Declaration, which Plaintiffs would have read in conjunction with the faulty Amended Complaint in order to bolster its averments, is essentially subsumed in the averments set forth in the proposed Second Amended Complaint, and, as such, this Reply Memorandum of Law shall utilize the proposed Second Amended Complaint as the basis for its analysis.

A.    Count I of the proposed Second Amended Complaint.

Plaintiffs now assert that Count I avers "at least four contracts between Plaintiffs and Defendants." Pltfs. Memorandum, p.3.

The first claimed contract is averred to have been between Plaintiffs and Paolo Zinni ("Zinni"), as Marra's agent. Second Amended Complaint, ¶15. Zinni is averred to have agreed to invest in MP, although neither the exact date nor approximate date of his averred executory agreement is mentioned in the Second Amended Complaint. The

10

agreement is averred to be that on or about April 10 or 11, 2005, Zinni would wire Euros 150,000 to Peracchino to re-loan to MP. Presumably, although nowhere is it averred, MP would issue its promissory note at an undisclosed interest rate, due one year from its issuance.  Nowhere is it disclosed whether Peracchino has agreed personally to guarantee the MP note.  This note, at the option of Zinni, was to be convertible into a 51% equity interest in MP.  Second Amended Complaint, ¶19. Plaintiffs' papers do not disclose the time-frame in which Zinni had to provide notice for the exercise of the conversion, whether the note could be prepaid or any other operative elements that are necessary to evidence a meeting of the minds for an executory agreement to invest in MP. Plaintiffs do not aver how the transaction was to close.  It does not appear from any pleading that any convertible note was prepared to be delivered or exchanged at a closing against payment.  The proposed Second Amended Complaint then avers that Zinni provided Plaintiffs with what turned out to be a forged copy of a bank advice evidencing a wire transfer. Second Amended Complaint, ¶¶20-21. When the wire transfer was not effectuated, Plaintiffs aver Zinni gave Peracchino his personal check for the Euros 150,000. Second Amended Complaint, ¶22.

Plaintiffs do not aver that they received any writing signed by Marra confirming either his agreement with the purported Zinni agreement with Plaintiffs nor any writing authorizing Zinni to act as Marra's agent.  What Plaintiffs have averred, however, is a failed agreement by Zinni to invest in MP, by way of an oral executory

11

agreement, which under New York law is barred from enforcement against Marra by two separate provisions of the Statute of Frauds.  Section 5-701 of the New York General Obligation Law, Contractual Obligations states in pertinent part:

> "(a) Every agreement, promise or undertaking is <u>void</u>, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> 1.   By its terms is not to be performed within one year <u>from the making thereof</u> . . .;
>
> 2.   Is a special promise to answer for the debt, default or miscarriage <u>of another person</u>." (Emphasis added.)

The proposed Second Amended Complaint, albeit somewhat cryptically and without enough detail to show a meeting of the minds, still established that the averred executory agreement was performable over a period greater than a year.  Since the repayment period for the note with the conversion feature was up to a year, any executory agreement to proceed with such a transaction, <u>ipso facto</u>, had to exceed that year's duration.  <u>Tierney v. Omnicom</u>, 2007 WL 2012412 (S.D.N.Y. 2007).

The Plaintiffs are also barred from asserting through the artifice of averring an undocumented agency relationship to circumvent the Statute of Frauds, what is in fact a claim that Marra agreed orally to answer for the debt, default or miscarriage of another person.  Plaintiffs' aver that Marra undertook orally to "resolve the

problem directly with Zinni" or "would get more directly and personally involved in the investment to avoid other mistakes", Second Amended Complaint ¶23. The Statute of Frauds bars Plaintiffs from asserting any liability against Marra based upon such oral comments. §5-701(2) of the New York General Obligations Law. Slavenburg Corp. v. Rudes, 86 A.D.2d 517 (1st Dept. 1982).

The second contract Plaintiffs claim, Pltfs. Memorandum, p.4, was "[a] new investment formula" purportedly "proposed" by someone who is not disclosed, but which Plaintiffs accepted. Second Amended Complaint, ¶24. The proposed Second Amended Complaint avers that Marra confirmed the "new formula" "on several occasions both verbally and in writing." The dates of such confirmations are not disclosed nor is the writing described nor is it averred that such writing was signed by Marra. The second contract also was executory in nature and even had what appears to be an express condition that 50,000 Euros were to be obtained "by investors and . . . and/or banks with the help of Marra." ¶25. Marra purportedly agreed to "inject" 100,000 Euros into MP "as a capital contribution", but the consideration for this capital contribution is not disclosed. Marra also purportedly agreed to loan 100,000 Euros to MP, but the term and interest rate is not disclosed. The description of the "second contract" is too indefinite to establish a meeting of the minds.

Even though no date is provided for when this "new investment formula" was purportedly proposed, it is not plausible that it occurred after Marra received the report from Dr. Giuseppe

13

Vasapollo ("Vasapollo"), Ex. 3 to Marra Aff.  In that report dated October 17, 2005, Vasapollo wrote to Marra that his examination of MP's financial records, which occurred at MP's headquarters in Turin, Italy, revealed that MP's financial condition was serious, approaching a "dramatic bankruptcy situation".  The report then proceeded to provide the figures to support Vasapollo's analysis.  Vasapollo's conclusion was that MP "cannot be saved".  Vasapollo's advice to Marra:

> "Since you have never been in the communications business, I strongly advice you to avoid any personal or business investment in Mediapress."

If the second averred contract related to discussions prior to Vasapollo's report, it is not plausible Marra would have agreed to anything.  And if the second averred contract occurred after Marra received Vasapollo's report, it was even more implausible that he had any more interest in MP at all.

Since the Plaintiffs' pleadings expressly rely upon Vasapollo's investigation of MP's financial condition, ¶23[4] of the Second Amended Complaint, and aver:

> "After review and approval by Vasapollo, Marra introduced Plaintiffs to his partner, Walter Toccafondi ('Toccafondi'), indicating that he would invest in MP."

The proposed Second Amended Complaint's claims, not grounded in an express time line, are effectively incoherent and/or are contradicted

---

[4]The proposed Second Amended Complaint has two ¶23's and this reference is to the second ¶23.

by the Vasapollo report, upon which Plaintiffs, by reference to Vasapollo, rely. None of the contract claims, specifically including the purported "third" and "fourth" contracts discussed below, can be considered "well-pleaded" and of the character that the Court is required to accept as true given their vagueness, their illogic as to how reasonable business people conduct their affairs or the actual documentary evidence upon which Plaintiffs would rely in reference to Vasapollo's role. Tierney v. Omnicom, 2007 WL 2012412 (S.D.N.Y. 2007) at p.4.

The third contract averred by Plaintiffs was with Michelucci, ¶29, who Plaintiffs later learned was only Marra's occasional driver, ¶29, but in November 2005, "confirmed" that "he would conduct the investment deal on behalf of Marra." ¶30. On this third effort, Michelucci was to introduce Plaintiffs to undisclosed financial institutions for the funds Plaintiffs sought, which led to Plaintiffs' meeting Sergio Lupi ("Lupi"), who, as an accountant, claimed to represent a financial institution. ¶36. It then was Lupi who confirmed that by April 25, 2006, unnamed financial institutions would wire Euros 320,000 to MP. The proposed Second Amended Complaint provides no details of the terms for the proposed wire, whether equity or debt was to be delivered against such wire, and, if debt, the interest rate or the term, absolutely nothing. ¶36. This third contract does not establish a meeting of the minds.

The fourth purported contract and its terms are not discussed by Plaintiffs at all in their Memorandum of Law at p.4 and

15

the paragraphs to which Plaintiffs in the Amended Complaint do not disclose any terms or consideration as to what Defendants would receive.  In any event, any claims of Marra's continued interest in looking at MP after October 23, 2005, lacks plausibility.

B.  <u>Counts II, III and IV of the proposed Second Amended Complaint</u>.

        Count II of the proposed Second Amended Complaint claims that Defendants are liable to Plaintiffs on the theory of promissory estoppel.  Plaintiffs cite <u>Henneberry v. Sumitomo Corp. Of America</u>, 2007 WL 2068346 (S.D.N.Y. 2007), in which the plaintiff lent funds to a corporation as a bridge loan in reliance upon the defendant's <u>agreement</u> that it would subscribe to that corporation's permanent financing.  When the defendant Sumitmo failed to perform in accordance with its <u>agreement</u> and the corporation defaulted as a result on its note to plaintiff, plaintiff sued Sumitomo on the grounds of promissory estoppel.

        No such fact pattern exists in the case at bar.  Rather, Plaintiffs did not extend credit to a third party upon the <u>agreement</u> that Defendants would invest in any third party.  Instead, Plaintiffs engaged in activities for their own benefit, whether hiring employees or renting space or planning some event, none of which can, in and of themselves, establish that Plaintiffs relied upon Defendants in any way, since each activity was for the direct benefit of Plaintiffs.  Since Plaintiffs' activities do not establish any reliance, Plaintiffs' claims of reasonable reliance fail, since only a binding contract would have permitted Plaintiffs reasonably to have relied

16

upon the promise of future funding to justify undertaking their business projects.  The same failure to plead reasonable reliance, an element for Count II, pertains to both Counts III and IV.

To the extent that Plaintiffs point to the acts of Zinni or Michelucci or other third parties to justify a claim against Marra, such claim against Marra  is barred by the Statute of Frauds. §5-701(2) of the New York General Obligations Law. Plaintiffs do not aver in any pleadings that they were provided with any document or other writing appointing any third parties as an agent of Marra with authority to bind Marra.

Finally, the proposed Second Amended Complaint fails to plead injury to Plaintiffs in terms of the reliance, in that Plaintiffs do not claim that they did not receive value for the employees they hired or the space they rented.  Plaintiffs apparently defaulted themselves on their contracts which was solely their own doing.  The argument also pertains to Counts III and IV.

Plaintiffs claim that their disclosure of their precarious financial condition would not have been made if they had known that Defendants "were not going to invest", Pltfs. Memorandum, p.8, is ludicrous on its face, and would, if accepted by any court, lead to a "Catch 22" situation.  No one could ever engage in obtaining financial information on a company in contemplation of a potential investment without being bound to make the investment.  Plaintiffs providing information on its financial condition cannot be a basis for claiming promissory estoppel though this is exactly Plaintiffs'

argument.   Pltfs. Memorandum, p.8.

> "Plaintiffs  would  not  have  sent  [its
> corporate  and  financial  documents  to
> Defendants] had they known that Defendants
> were not going to invest."

Count III of the proposed Second Amended Complaint pleads equitable estoppel.  If Defendants did not agree to invest, it would not have been reasonable in a commercial setting for Plaintiffs to have relied upon the so called "false" representations averred to have been made "on numerous occasions" but not premised in time relative to MP's financial disclosures, that they would invest in MP.  Pltfs. Memorandum, p.10.  No benefit to Defendants was elicited by the acts in which Plaintiffs purportedly engaged, which were for their own benefit and not the benefit of Defendants. Also, as in Count II's claim for promissory estoppel, Plaintiffs' conduct in their own behalf does not demonstrate any reliance reasonable or otherwise based upon Defendants' or anyone else's averred promises or representations. Plaintiffs' claim that Defendant had some kind of special or fiduciary relationship to Plaintiffs is discussed below under the breach of fiduciary duty claim.

Count IV's fraud claim is premised upon the fact that Defendants intentionally misled Plaintiffs into over-extending themselves financially in reliance upon the knowingly false promises of Defendants in order to cause Plaintiffs' business to be destroyed. Defendants purportedly either as competitors of Plaintiffs or with the intent of becoming competitors of Plaintiffs intended this harm to

come to Plaintiffs.[5]

Accepting as true the facts pled by Plaintiffs, the fraud claim must fail for the same reasons as the promissory and equitable estoppel claims; i.e. Plaintiffs have failed to plead facts showing any reliance, reasonable or otherwise, upon Defendants' purported repre-sentations or promises. Plaintiffs' business decision to rent for themselves more space or to hire additional personnel do not constitute legal reliance since these expenditures were for Plaintiffs own use and Plaintiffs have offered no authority where fraud has been found by causing a party to spend resources for its own benefit. In fact, Plaintiffs do not state what, if any, other purported reliance occurred by Plaintiffs. Pltfs. Memorandum at p.12 omitting any separate discussion of reliance in its fraud claim. Plaintiffs' attempt to bolster the reliance issue with the rather creative averments pertaining to Defendants' supposive fiduciary and confi-dential relationship to Plaintiffs based upon alleged "superior knowledge" is discussed under the analysis of the fiduciary duty claim.

Finally, while the Pltfs Memorandum at p.15 asserts that:

> "Defendants received benefits: (1) the money Plaintiffs paid to Marra and (2) the fact that Plaintiff's business, which competes with Marra's business, was nearly destroyed by Defendants."

the proposed Second Amended Complaint avers no money Plaintiffs paid

---

[5]Vasopollo statement in his report of October 23, 2005, quoted supra at p.14, belies Plaintiffs' concocted motive.

to Marra.  In fact, the only money Plaintiffs are averred to have spent was for their own rent, employees, events and business plan and the payment of Euros 5,000 to Riccardo Piana purportedly "to commence marketing MP's services" after which "Piana disappeared".  Second Amended Complaint, ¶18. No averment is contained in the proposed Second Amended Complaint that Marra benefited from such payment or was even aware of or knew Piana.

C.   <u>Count IV of the proposed Second Amended Complaint</u>.

     Pltfs Memorandum at p.15, argues that Defendants receive two benefits which constitute unjust enrichment: "(1) money and (2) benefited from MP's near ruin."  Plaintiffs cite no authority, and Defendants believe that no authority exists for a claim for unjust enrichment based upon the alleged wrongful impairment of another's business, even if a competitor.  Unjust enrichment requires the actual transfer of property or other benefit of one party directly to another, the receipt of which should not be <u>retained</u> in equity and good conscience, and thus should be disgorged and returned. The impairment of a business is not something that can be returned.  <u>Indyk v. Habib Bank Ltd.</u>, 694 F.2d 54, 57 (2d. Cir. 1982).

     As to the broad claim that Defendants actually received money from Plaintiffs, no where in the proposed Second Amended Complaint do Plaintiffs aver of any money paid to Marra by Plaintiffs, either directly or through any third party.

D.   <u>Count VII of the proposed Second Amended Complaint</u>.

     Count VII of the proposed Second Amended Complaint claims

a breach of fiduciary duty.  It was Plaintiffs who met Defendants, for the purpose of inducing them to invest in MP, and, as such, were not fiduciaries.  Second Amended Complaint, ¶¶13-14.  The conclusory arguments that Plaintiffs advance that Defendants were fiduciaries are as follows:

(1) Defendants had superior knowledge to Plaintiffs of all facts and circumstances described in the pleading;

(2) apparently based upon the fact that Plaintiffs had provided Defendants with financial and corporate records, Plaintiffs needed the investments and Defendants knew it;

(3) Plaintiffs were dependent upon the Defendants' investing; and

(4) Marra referred to Peracchino as "his beloved friend", even in a business context.

The above averments, which are repeated and relied upon in Counts II, IV and V of the Second Amended Complaint, do not a fiduciary relationship make.  Defendants do not fall within, nor do Plaintiffs' pleading aver, any of the traditional categories that constitute a special, confidential relationship such as a professional with superior expertise, a long time trusted friend and advisor, a trustee, an officer or director of a corporation, an agent, a majority shareholders et cetera.

Plaintiffs acknowledge that it was they who proposed to Marra to invest in MP. Second Amended Complaint ¶14. In connection with such solicitation, Plaintiffs disclosed, as this country's securities laws require, since MP was offering to  sell a 51% stock

21

interest in MP, the business plans and financials of MP. The pleading makes no mention of any confidentiality agreements executed in connection with such disclosure; but if there had been, Defendants' obligations as to confidentiality would not have exceeded such agreement's terms.

Nor do the Plaintiffs plead any factual circumstances constituting "superior knowledge" as recognized by the law, which usually means special expertise or inside information. The Plaintiffs' disclosure to Defendants of their business plan and financial condition only amounts to providing Defendants with what Plaintiffs already knew and was required to permit Defendants to make an informed determination as to whether they might be prepared to negotiate to ascertain whether any investment in MP might make business sense. Plaintiffs make the utterly impracticable and, therefore, implausible argument that Defendants had to commit to investing in MP _prior_ to obtaining and analyzing MP's confidential business plan and financial condition. To believe that such commitment had been made itself would be absurd and implausible to contemplate. What is more, it would have been unreasonable for Plaintiffs to have relied upon any such promises and/or representations from Defendants prior to their review of MP's financial condition and business plan. Yet here is Plaintiffs' argument:

> "(4) Plaintiffs did not know that Defendants would not invest, _otherwise they would not have_ ... _sent Defendants sensitive and highly confidential documents;_

(5) they reasonably relied on Defendants'
promises . . .; and

(6) they changed their position by spending
money in reliance and <u>by sending documents
to Defendants</u>, to their detriment."(Emphasis
added.) Pltfs. Memorandum, pp.10-11.

Plaintiffs claim that Defendant had "exclusive knowledge".
Pltfs Memorandum, p.14.  What this "exclusive knowledge" is, however,
eludes description.  Furthermore, Plaintiffs asserts that they were
"without knowledge", but of what also eludes description. The Plain-
tiffs also claim that Marra's reference to Peracchino "as his beloved
friend, even in a business context" made it reasonable for Plaintiffs
to repose trust in Marra of the type justified for a fiduciary, Pltfs.
Memorandum, p.9, and therefor reasonable to rely upon Defendants'
indefinite averred promises devoid of sufficient specificity to
constitute the meeting of the minds as required for the formation of
a contract. Plaintiffs make this argument, without any supporting
legal authority, and in the face of authority which expressly holds
that generalized statements of interest and enthusiasm do not legally
bind parties in a commercial setting.  <u>Eternity Global Master Fund,
Ltd. v. Morgan Guaranty Trust Co.</u>, 375 F.3d 168, 187-188 (2d Cir.
2004).[6]

Plaintiffs provide no authority for how any expression of
friendship, "beloved" or otherwise, occurring apparently out of only

---

[6]This point in <u>Eternity</u> is not addressed by Plaintiffs in their Memorandum of Law, even
though it is expressly quoted in Defs. Memorandum of Law, pp.12-13.

two face-to-face meetings between Marra and Peracchino converts a garden variety arms-length business relationship into a fiduciary relationship.  If Plaintiffs' perception of commercial realities were to hold true, ordinary persons attempting to negotiate business deals would be unable to provide any personal warmth during negotiations without having to walk on "eggshells" in every expression of interest that might arise during negotiations.

### POINT IV

### THE CROSS-MOTION TO FILE THE SECOND AMENDED COMPLAINT SHOULD BE DENIED AS FUTILE

While generally amendments to pleadings are liberally granted, motions for such leave are properly denied where the proposed pleading still fails to state a claim upon which relief can be granted and would otherwise be fruitless.   Smith v. O'Connor, 901 F.Supp. 644, 650 (S.D.N.Y. 1995):

> ". . . it remains true that if a proposed amendment would simply state a claim that would be subject to dismissal for insufficiency pursuant to Fed. R. Civ. P. 62(b)(6), the proper course is to deny the motion to amend."

**CONCLUSION**

Defendants' motion to dismiss should be granted and Plaintiffs' motion for leave to file and serve their Second Amended Complaint should be denied.

Dated: New York, New York
       September 12, 2007

                              Respectfully Submitted,
                              KAYSER & REDFERN, LLP

                              By:_____/s/_____
                                   LEO KAYSER, III (LK 3550)
                              Attorneys for Defendants
                              515 Madison Avenue, 30th Fl.
                              New York, NY 10022
                              212-935-5057

TO:
FRANCESCO DI PIETRO (FD 6383)
WUERSCH & GERING, LLP
100 Wall Street, 21st Fl.
New York, NY 10005
212-509-4716

25